**No. 26-____**

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

JANE DOE, by and through next friend JOHN DOE, RICHARD ROBINSON, YOLANDA BROWN, JONATHAN LEBLOND, PATRICIA ORRIS, ANGELA STEVENS, JESSICA JACKSON, MELISSA OATMAN, JUSTIN REVELO, and TAYLOR VALL, on behalf of themselves and all other persons similarly situated,

*Plaintiffs-Respondents*,

v.

APPLE INC.,

*Defendant-Petitioner*.

Petition for Permission to Appeal from the U.S. District Court for the Southern District of Illinois, No. 3:20-cv-00421-NJR, Hon. Nancy J. Rosenstengel

## APPLE INC.'S PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

PURVI G. PATEL
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017

GREGORY F. MILLER
MORRISON & FOERSTER LLP
925 Fourth Avenue, Suite 3800
Seattle, WA 98104

CASSANDRA J. LINCOLN
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

JOSEPH R. PALMORE
    *Counsel of Record*
KATIE VIGGIANI
TIFFANI FIGUEROA
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(202) 887-6940
JPalmore@mofo.com

*Counsel for Apple Inc.*

JUNE 22, 2026

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____

Short Caption: Jane Doe et al. v. Apple Inc.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

     ☑   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Apple Inc.

_____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Morrison & Foerster LLP; DLA Piper LLP (US); Dowd Bennett LLP; Greensfelder, Hemker & Gale, P.C.

_____

(3)   If the party, amicus or intervenor is a corporation:

    i)   Identify all its parent corporations, if any; and

      None

    ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      None

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Joseph R. Palmore     Date: 06/22/2026

Attorney's Printed Name: Joseph R. Palmore

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☑  **No** ☐

Address: 250 West 55th Street

New York, NY 10019

Phone Number: (202) 887-6940     Fax Number: (202) 887-0763

E-Mail Address: JPalmore@mofo.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____

Short Caption: Jane Doe et al. v. Apple Inc.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Apple Inc. _____

_____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Morrison & Foerster LLP; DLA Piper LLP (US); Dowd Bennett LLP; Greensfelder, Hemker & Gale, P.C.

_____

(3)   If the party, amicus or intervenor is a corporation:

     i)   Identify all its parent corporations, if any; and

       None

     ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       None

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: /s/ Katie Vigggiani     Date: 06/22/2026

Attorney's Printed Name: Katie Vigggiani

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: 250 West 55th Street

New York, NY 10019

Phone Number: (212) 336-4212     Fax Number: (212) 468-7900

E-Mail Address: KViggiani@mofo.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____

Short Caption: Jane Doe et al. v. Apple Inc.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Apple Inc. _____

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Morrison & Foerster LLP; DLA Piper LLP (US); Dowd Bennett LLP; Greensfelder, Hemker & Gale, P.C.

_____

(3)    If the party, amicus or intervenor is a corporation:

      i)    Identify all its parent corporations, if any; and

          None _____

      ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          None _____

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A _____

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A _____

---

Attorney's Signature: /s/ Tiffani Figueroa _____ Date: 06/22/2026 _____

Attorney's Printed Name:  Tiffani Figueroa _____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address:  250 West 55th Street _____

    New York, NY 10019 _____

Phone Number:  (212) 336-4193 _____ Fax Number:  (212) 468-7900 _____

E-Mail Address:  TFigueroa@mofo.com _____

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____

Short Caption: Jane Doe et al. v. Apple Inc.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

     ✓    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Apple Inc.

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Morrison & Foerster LLP; DLA Piper LLP (US); Dowd Bennett LLP; Greensfelder, Hemker & Gale, P.C.

_____

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Purvi G. Patel        Date: 06/22/2026

Attorney's Printed Name: Purvi G. Patel

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ✓

Address: 707 Wilshire Boulevard, Suite 6000

Los Angeles, CA 90017

Phone Number: (213) 892-5296       Fax Number: (213) 892-5454

E-Mail Address: PPatel@mofo.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____

Short Caption: _Jane Doe et al. v. Apple Inc._____

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      ☑   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
_Apple Inc._____

_____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
_Morrison & Foerster LLP; DLA Piper LLP (US); Dowd Bennett LLP; Greensfelder, Hemker & Gale, P.C.___

_____

(3)   If the party, amicus or intervenor is a corporation:

    i)   Identify all its parent corporations, if any; and

       _None_____

    ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       _None_____

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   _N/A_____

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   _N/A_____

Attorney's Signature: _/s/ Gregory F. Miller_____ Date: _06/22/2026_____

Attorney's Printed Name: _Gregory F. Miller_____

Please indicate if you are _Counsel of Record_ for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: _925 Fourth Avenue, Suite 3800_____

_Seattle, WA 98104_____

Phone Number: _(206) 327-6383_____ Fax Number: _(206) 260-8813_____

E-Mail Address: _GMiller@mofo.com_____

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____

Short Caption: Jane Doe et al. v. Apple Inc.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  Apple Inc. _____

_____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

  Morrison & Foerster LLP; DLA Piper LLP (US); Dowd Bennett LLP; Greensfelder, Hemker & Gale, P.C.

_____

(3)   If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

      None

    ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      None

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  N/A

Attorney's Signature: /s/ Cassandra J. Lincoln      Date: 06/22/2026

Attorney's Printed Name: Cassandra J. Lincoln

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address: 425 Market Street

      San Francisco, CA 94105

Phone Number: (415) 268-7080      Fax Number: (415) 268-7522

E-Mail Address: CLincoln@mofo.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ...........................................................................................1

BACKGROUND ............................................................................................3

      A.    BIPA...............................................................................................3

      B.    Apple's People Album Feature ..............................................4

      C.    Plaintiffs' Claims......................................................................7

      D.    The Certification Order ...........................................................9

QUESTIONS PRESENTED...........................................................................9

REASONS FOR GRANTING THE PETITION.........................................10

I.    THE CERTIFICATION ORDER IS QUESTIONABLE AND RISKS
    A DISPOSITION THAT DOES NOT REFLECT THE MERITS ..............11

      A.    The District Court Failed To Conduct A Rigorous Analysis Of
           Rule 23's Requirements ......................................................11

           1.    The district court failed to conduct a rigorous
               predominance analysis ...........................................11

               a.    The district court failed to adequately define the
                    "biometric identifiers or biometric information"
                    element and specify the proof it requires ......................12

               b.    Other individualized issues confirm the lack of
                      predominance...............................................................15

           2.    The district court also failed to conduct a rigorous
                superiority analysis ................................................18

      B.    The Certification Order Creates Coercive Settlement Pressure
           Divorced From The Merits....................................................20

II.    IMMEDIATE REVIEW IS NEEDED TO PROVIDE GUIDANCE ON IMPORTANT, RECURRING QUESTIONS ..................................................21

CONCLUSION .......................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Arandell Corp. v. Xcel Energy*,
149 F.4th 883 (7th Cir. 2025) ...................................................................14

*Blair v. Equifax Check Servs.*,
181 F.3d 832 (7th Cir. 1999) ...................................................2, 11, 20, 21

*Campbell v. Facebook*,
315 F.R.D. 250 (N.D. Cal. 2016).............................................................18

*Castelaz v. Estée Lauder*,
No. 22 CV 5713, 2024 WL 136872 (N.D. Ill. Jan. 10, 2024) ......................14, 23

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)................................................................................14, 18

*Cothron v. White Castle Sys.*,
216 N.E.3d 918 (Ill. 2023)......................................................................17

*Creative Montessori Learning Ctrs. v. Ashford Gear*,
662 F.3d 913 (7th Cir. 2011) ..................................................................21

*Daichendt v. CVS Pharmacy*,
No. 22 CV 3318, 2023 WL 3559669 (N.D. Ill. May 4, 2023) ..........................23

*Dancel v. Groupon*,
949 F.3d 999 (7th Cir. 2019) ..................................................................24

*Davis v. e.l.f. Cosms.*,
No. 22 C 5069, 2024 WL 2722663 (N.D. Ill. May 28, 2024) ......................22, 23

*Essex Ins. v. Stage 2*,
14 F.3d 1178 (7th Cir. 1994) ..................................................................17

*G.T. v. Samsung Elecs. Am.*,
742 F. Supp. 3d 788, 799 (N.D. Ill. 2024)......................................................4, 22

*Gen. Tel. v. Falcon*,
457 U.S. 147 (1982)................................................................................11

*Kohen v. Pac. Inv. Mgmt.*,
    571 F.3d 672 (7th Cir. 2009) ..................................................................21

*Mullins v. Direct Digital*,
    795 F.3d 654 (7th Cir. 2015) ...................................................18, 19, 24

*Patel v. Facebook*,
    932 F.3d 1264 (9th Cir. 2019) ...............................................................22

*Rosenbach v. Six Flags Ent.*,
    129 N.E.3d 1197 (Ill. 2019) ......................................................................3

*Schroeder v. Progressive Paloverde Ins.*,
    146 F.4th 567 (7th Cir. 2025) ...........................................................11, 12

*Shady Grove Orthopedic Assocs. v. Allstate Ins.*,
    559 U.S. 393 (2010) ...............................................................................20

*Svoboda v. Amazon.com*,
    168 F.4th 956 (7th Cir. 2026) ......................... 2, 11, 12, 15, 16, 22, 24

*Szabo v. Bridgeport Machs.*,
    249 F.3d 672 (7th Cir. 2001) ..................................................................21

*Wal-Mart Stores v. Dukes*,
    564 U.S. 338 (2011) ...............................................................................14

*West v. Prudential Sec.*,
    282 F.3d 935 (7th Cir. 2002) ...........................................................14, 22

*Zellmer v. Meta Platforms*,
    104 F.4th 1117 (9th Cir. 2024) ...............................................................22

**Statutes**

740 ILCS 14/5 ..............................................................................................3

740 ILCS 14/10 ......................................................................................2, 3, 4

740 ILCS 14/15 ...................................................................................2, 3, 22

740 ILCS 14/20 ...................................................................................3, 4, 8

**Rules**

Fed. R. Civ. P. 23 ............................................................................................18

**Other Authorities**

Blake Fensom et al., *The Who, Why, and Where of Biometric Privacy Litigation: An Empirical Analysis of BIPA Cases 2015-2024*, The Antitrust Source, June 2025 ...............................................................21, 22

**INTRODUCTION**

This case involves the People album feature in Apple's Photos app, which uses numerical vectors to try to organize photos into albums so that users can easily browse pictures of themselves, friends, family, or pets. Because privacy is one of Apple's core values, the feature has multiple privacy-protective safeguards. The vectors cannot recreate a face and are not inherently linked to a person's name or identity. The feature gives users control—they can choose whether to label an album and how to do so, such as with a name, nickname, or emoji. Apple cannot access vector data, does not decrypt or use album labels, and does not know who appears in a user's People albums, whether any album is labeled, or what any label says.

Despite those privacy safeguards, Plaintiffs sued Apple under the Illinois Biometric Information Privacy Act ("BIPA"). The district court certified three classes encompassing up to 6.5 million individuals and potentially exposing Apple to significant liability. That order warrants immediate review because it does what Rule 23 forbids: it allows a massive class to proceed while reserving for later the individualized issues that determine whether the class should exist in the first place.

The district court repeatedly failed to follow bedrock Rule 23 predominance principles. Individualized questions pervade every aspect of the case—liability, defenses, and damages. On liability, the court failed to adequately define the "biometric identifiers or biometric information" element of Plaintiffs' claims, *see*

740 ILCS 14/10, 15(a)-(b), and then "identify . . . the proof necessary for" establishing it, *Svoboda v. Amazon.com*, 168 F.4th 956, 961 (7th Cir. 2026). Instead, the court wrongly asserted—without supporting citation or explanation—that if Plaintiffs prove Apple collects "biometric data that is capable of identifying an individual, regardless of whether the person used [personal identifying information]," that showing "affects the entire class." Dkt.342 ("Order") at 20-21. The district court never explained why that showing would establish a violation of the statute or be provable class-wide. The court compounded this threshold error by reserving for later other individualized issues—extraterritoriality, affirmative defenses, and BIPA's discretionary damages.

The district court's superiority ruling, too, was flawed. Apple has no records showing whether any users identified themselves in a People album, yet the court deemed class membership manageable through self-identification. That ruling permits a class of up to 6.5 million members to proceed without a reliable way to verify who belongs in it, raising substantial due process and fraud concerns.

Immediate review is critical. Rule 23(f) is designed for cases where deferring review may be "too late" given the settlement pressure created by certification. *Blair v. Equifax Check Servs.*, 181 F.3d 832, 834 (7th Cir. 1999). The order also presents recurring BIPA questions:  what makes data sufficiently identifying to be "biometric"; how common law defenses affect predominance; and whether self-

2

identification can satisfy superiority when the defendant cannot verify class membership.  Those questions—which the district court deferred for later here—will continue to arise until this Court provides guidance.

## BACKGROUND

### A.    BIPA

Illinois enacted BIPA to address risks associated with the collection and retention of "biometric identifiers and information."  *See* 740 ILCS 14/5; *Rosenbach v. Six Flags Ent.*, 129 N.E.3d 1197, 1206 (Ill. 2019).  The Act protects information that, unlike a password or Social Security number, is "biologically unique" and "cannot be changed if compromised or misused."  740 ILCS 14/5(c); *Rosenbach*, 129 N.E.3d at 1206 (citation omitted).

Section 15(a) allows certain claims against private entities that possess biometric identifiers or information without maintaining a publicly available retention and destruction policy.  740 ILCS 14/15(a), 20.  Section 15(b) authorizes claims against entities that obtain a person's biometric identifier or information without first providing written notice and obtaining a written release.  *Id.* 14/15(b), 20.

Those duties apply only to information within BIPA's statutory definitions.  BIPA defines a "[b]iometric *identifier*" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," while expressly *excluding*

3

"photographs." *Id.* 14/10 (emphasis added). "Biometric information" means information "based on an individual's biometric identifier *used to identify an individual*." *Id.* (emphasis added).

Courts have disagreed on the scope of the "biometric identifiers or biometric information" element. Specifically, "[c]ourts are divided on whether a plaintiff must allege a biometric identifier can identify a particular individual, or if it is sufficient to allege the defendant merely scanned, for example, the plaintiff's face or retina." *G.T. v. Samsung Elecs. Am.*, 742 F. Supp. 3d 788, 799 (N.D. Ill. 2024), *appeal pending*, No. 25-1120 (7th Cir. argued Oct. 28, 2025). And the former camp is further divided, with some courts "holding that technology that cannot identify individuals" by itself "does not fall within BIPA," and others holding that it is enough if "individual identification" is theoretically possible by using the data "in combination with personal identifying information" on the device or associated with the user's account. *Id.* at 800-01.

BIPA authorizes a prevailing plaintiff to seek $1,000 for a negligent violation or $5,000 for an intentional or reckless violation, as well as injunctive relief, attorneys' fees, expert fees, and costs. 740 ILCS 14/20.

## B.    Apple's People Album Feature

Apple's People album feature helps users organize photographs in the Photos app. The feature uses on-device machine learning to try to cluster photos of a person

4

with other photos of the same person. Dkt.192 ("Opp") at 3. It does so by comparing certain information within the pixels of a photo and generating a vector of decimal-point numbers. Opp.3-4. That vector is not a face, cannot recreate a face image, and does not contain a person's name or any potentially identifying information. Opp.4; Dkt.272 ("Supp.Opp") at 10.

The numerical vector is used to try to cluster photos containing the same person, allowing users to easily access photos of friends, family, and pets. Opp.3. Once photos are organized into a People album, a user may choose whether and how to engage with it. Users may label the album with a name (partial or complete), a nickname, a generic descriptor, an emoji, or nothing at all. Opp.3-4; *see* Fig.1 (People album with user-labeled name tags). The feature itself does not otherwise assign identifying information to the face within each album. Opp.3-4.



Fig.1(Dkt.250 ¶205)

That user control reflects Apple's deliberate privacy-protective design. The clustering process runs on the user's device: Apple does not access or control the vectors or users' People albums, and it does not know which users have People albums, who appears in those albums, or whether and how those albums are labeled. Opp.4-5. Users may separately choose to enable iCloud Photos, which stores photos and certain associated data in their own iCloud Photos library. Opp.4-5. Before People album-related data is synced to iCloud, it is encrypted; Apple does not access users' photos or labels or use that data to identify users. Opp.4-5.

In 2024, Apple released a software update that (where certain device software and storage requirements are met) allows additional Photos data, including vectors, to sync across a user's Apple devices in an end-to-end encrypted state. Supp.Opp.3-5. As a result, each user's device no longer needed to independently generate vectors to cluster the same photos. Supp.Opp.3. The synced vector remains end-to-end encrypted and inaccessible to Apple. Supp.Opp.3-4.

### C.     Plaintiffs' Claims

Plaintiffs allege that the People album feature creates a "faceprint" for each person detected in a user's photo library, and that these "faceprints" constitute "biometric identifiers or biometric information" under BIPA. Order.3. Plaintiffs further allege that Apple did not obtain users' consent, in violation of Section 15(b), or develop a retention and destruction policy, in violation of Section 15(a). Order.4.

Plaintiffs first moved to certify two classes: (1) a "Local Device" class of "[e]very Illinois citizen whose Apple Device put a photograph of that citizen into a People album," and (2) an "iCloud Subclass" of "[e]very Illinois citizen who had an Apple Device with a People album tagged with that citizen's name or other identifier, and had an iCloud account enabled for photo storage." Dkt.177 ("Motion") at 4. Plaintiffs later moved to certify an additional "iCloud Faceprint" subclass defined as "[e]very Illinois citizen who had an Apple Device running iOS 17.6, MacOS Sonoma 14.6 or iPadOS 17.6 or later and: (1) had iCloud photo library

7

enabled with at least 10 gigabytes of storage, and (2) their Apple Device put a photograph of that citizen into a People album, and (3) who had 5,000 or more assets (*i.e.*, photos and videos) in their iCloud photo library." Dkt.243 ("Supp.Motion") at 4. Plaintiffs estimate class sizes of 6.5 million, 1 million, and 2.6 million members, respectively, and seek up to $5,000 in statutory damages per individual. Motion.5-6; Supp.Motion.1; *see* 740 ILCS 14/20(a)(1)-(2).

Apple opposed certification. It explained—and Plaintiffs never disputed—that what Plaintiffs call "faceprints" are numerical vectors that are not, by themselves, associated with a name or other real world identity. Opp.3-4; Supp.Opp.9-10. Plaintiffs nonetheless speculated that vectors are capable of identifying individuals because Apple independently knows the identities of device users through their Apple IDs—and that vectors, "alone or in conjunction with" users' personal information can therefore be used to identify someone. Dkt.213 ("Reply") at 4, 6. As to the "Local Device" class, Plaintiffs allege that Apple "collect[s]" biometric identifiers or information when the Photos app processes photos exclusively on a user's device. Motion.2-4; Opp.3-4. As to the iCloud subclasses, Plaintiffs allege that Apple further "obtain[s]" biometric identifiers or information when vectors are synced to Apple's servers through iCloud, even though that data is encrypted and inaccessible to Apple. Motion.2-4; Supp.Motion.3-4; Supp.Opp.3-5.

**D.    The Certification Order**

On June 5, 2026, the district court granted Plaintiffs' motion, certifying all three classes.  Order.27.

On predominance, the court held that the question whether Apple collected information capable of identifying someone "affect[s] the class as a whole" and that "individual questions regarding putative class members' use of [personal identifying information]" did not predominate.  Order.20-21.  The court rejected Apple's argument that whether the alleged data qualifies as biometric identifiers or information depends on individualized proof about each user's choices and labels, characterizing Apple's argument as "essentially asking the Court to rule on the merits of Plaintiffs' BIPA claim."  Order.20-21.  The court posited that other individualized questions identified by Apple could be disregarded because they were "pertinent only to the criteria for class membership" or could be addressed at a later damages phase.  Order.20-25.

On superiority, the court found a class action manageable and superior, reasoning that "a combination of Apple's Illinois customer lists, iCloud enrollees, and user declarations can identify the class members."  Order.23, 27.

## QUESTIONS PRESENTED

1.    Whether this Court should grant interlocutory review where the district court certified a class of millions of individuals without rigorously analyzing:

9

(a) whether common proof can establish that the alleged "faceprints" qualify as "biometric identifiers" under BIPA, where the "faceprints" are anonymous numerical vectors that cannot alone identify a person and where it is up to a user whether to label a People album with personal identifying information, if at all;

(b) individualized issues of extraterritoriality, affirmative defenses, and discretionary damages;

(c) manageability problems arising from Apple's lack of information on whether, where, and how putative class members engaged with the People album feature, which prevents Apple from verifying whether self-identifying claimants are class members.

2.    Whether this Court should grant interlocutory review to address recurring questions concerning Rule 23's application to BIPA class actions, including the meaning of "biometric identifiers or biometric information," the availability of common law affirmative defenses, and the permissibility of self-identification where a defendant cannot verify class membership.

## REASONS FOR GRANTING THE PETITION

Interlocutory review of the class certification order is warranted for two reasons.  First, the decision is "questionable," "the stakes are large[,] and the risk of settlement or other disposition that does not reflect the merits of the claim is

10

substantial." *Blair*, 181 F.3d at 835.  Second, even apart from the merits, granting this appeal "may facilitate the development of the law."  *Id.*

## I.     THE CERTIFICATION ORDER IS QUESTIONABLE AND RISKS A DISPOSITION THAT DOES NOT REFLECT THE MERITS

### A.     The District Court Failed To Conduct A Rigorous Analysis Of Rule 23's Requirements

"Class certification is only proper if the district court 'is satisfied, after a rigorous analysis, that the prerequisites of [Rule 23] have been satisfied.'" *Schroeder v. Progressive Paloverde Ins.*, 146 F.4th 567, 573 (7th Cir. 2025) (quoting *Gen. Tel. v. Falcon*, 457 U.S. 147, 161 (1982)).  The district court's analysis here fell short of the required rigor on both predominance and superiority.

#### 1. The district court failed to conduct a rigorous predominance analysis

To conduct a proper predominance analysis, "a district court *must* identify the elements of each claim, the proof necessary for each, the manageability of those issues at trial, and alternative procedural tools."  *Svoboda*, 168 F.4th at 961 (emphasis added).  Then, "the court must scrutinize the relationship between common and individual questions and assess their relative importance."  *Id.*

Here, the district court failed to rigorously analyze several issues central to liability, defenses, and recovery:  whether the vectors at issue qualify as BIPA-covered "biometric identifiers or biometric information," whether the alleged violations occurred in Illinois, and whether user-specific knowledge and choices

11

preclude or limit damages. Those issues—the core determinants of liability and damages—require individualized proof.

### a. The district court failed to adequately define the "biometric identifiers or biometric information" element and specify the proof it requires

The district court acknowledged that "the key disputed issue" here is whether the data at issue are "biometric data" for BIPA purposes. Order.20. Yet the district court failed to properly "identify" what the "biometric identifiers or biometric information" statutory "element[]" requires, or "identify . . . the proof necessary for" establishing it. *Svoboda*, 168 F.4th at 961. Instead, the court simply asserted that whether the vectors are covered by BIPA "can be resolved on a classwide basis"—even though they "do not associate a name with the face." Order.8-9. The court reasoned that Apple can somehow "identify users" by using vectors "in combination with users' personal information" associated with their "Apple IDs." Order.9. That conclusory reasoning violated this Court's precedents.

The district court "never defined" the "biometric identifiers or biometric information" element with enough specificity to clarify what "each class member must show" to establish it. *Schroeder*, 146 F.4th at 575. The court described the relevant question as whether the alleged data is "capable of identifying an individual." Order.21. But it failed to explain what "capable of identifying" means

12

in the context of this case, where Apple cannot connect a given set of vectors to a user's Apple ID and their "personal information." Order.8-9, 21.

Apple argued that BIPA covers only data capable of identifying the device user whose "faceprint" was allegedly collected. Opp.6-8; Supp.Opp.7-10. For each class member, whether the user had supplied personal identifying information associating themselves with a given album is one of several inquiries necessary to determine if Apple had obtained a biometric identifier or information for that user. The district court purported to render that issue "irrelevant" by asserting that the alleged "faceprints" would qualify as "biometric data" so long as Apple could "identify users from their faceprints . . . *in combination with* users' personal information" on a "classwide basis." Order.9, 12 (emphasis added). But the court failed to explain the critical link: how the vectors and personal information could be used "in combination" without Apple knowing which set of vectors belonged to the user. *Id.* Neither Plaintiffs nor the court cited evidence that—on a class-wide or even an individual basis—Apple can associate a particular vector with a particular Apple ID, name, or email address, with or without additional user inputs. Worse, the court ignored the fact that Apple cannot access the vector itself. Opp.4; Supp.Opp.4-5.

The named Plaintiffs demonstrate why this issue is necessarily individualized: Apple did not know whether any of the named Plaintiffs had labeled their People

13

albums until it deposed them. Supp.Opp.9. And Plaintiffs' testimony revealed significant variation: some did not label their People albums at all, while others used only a first name or similar non-unique label. Supp.Opp.9. That is precisely the kind of user-by-user inquiry the district court failed to account for.

The district court magnified its mistake by claiming that Apple's argument was "essentially asking the Court to rule on the merits of Plaintiffs' BIPA claim." Order.21. That was legal error. The Supreme Court has repeatedly emphasized that the "rigorous analysis" required to assess Rule 23's requirements "will frequently entail 'overlap with the merits of the plaintiff's underlying claim,'" and that this is no excuse for a court to dodge relevant questions. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (quoting *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 351 (2011)). And this Court has reiterated that courts are "not permitted to 'duck hard questions by observing that . . . considerations relevant to class certification may also affect a decision on the merits.'" *Arandell Corp. v. Xcel Energy*, 149 F.4th 883, 893-94 (7th Cir. 2025) (quoting *West v. Prudential Sec.*, 282 F.3d 935, 938 (7th Cir. 2002)).

The district court's failure to properly analyze the "biometric identifiers or biometric information" element and the proof it requires is a fatal flaw in its predominance analysis. Whether the vectors qualify as biometric identifiers or information is "the most foundational aspect" of Plaintiffs' BIPA claims. *Castelaz*

14

*v. Estée Lauder*, No. 22 CV 5713, 2024 WL 136872, at *7 (N.D. Ill. Jan. 10, 2024) (citation omitted).  And class certification is improper "where liability turn[s] on an [element] requiring individual resolution."  *Svoboda*, 168 F.4th at 966.

### b. Other individualized issues confirm the lack of predominance

The certification order is problematic on other grounds as well.

*Extraterritoriality*.  The court erred by assuming common proof exists for BIPA's Illinois-location requirement.  Order.22-23.  BIPA does not apply extraterritorially, so class members must show that relevant conduct "occurred primarily and substantially in Illinois."  *Svoboda*, 168 F.4th at 959.  Here, the classes are defined by Illinois citizenship and device ownership, not by in-state use of the People album or iCloud features.  Order.27.  As this Court has emphasized, "the geographic place from which a class member used the [software]" is an "individual question."  *Svoboda*, 168 F.4th at 963.

The individualized nature of that inquiry was confirmed by the named Plaintiffs' own testimony:  many routinely took photos outside Illinois, and several could not confirm they were in Illinois when they installed the update relevant to their iCloud Faceprint subclass claims.  Opp.9-10; Supp.Opp.10-12.  The district court brushed aside those individualized questions, citing testimony from Apple's corporate representative that Apple collects and maintains user location data and concluding that Apple can "turn to common proof within its own data to determine

where the relevant activities occurred." Order.22-23. But that testimony concerned general device registration data associated with Apple IDs—*not* location data tied to when a user's photos were clustered, when a People album was labeled, or when iCloud syncing occurred. Supp.Opp.16-17. Unlike in *Svoboda*, where objective information such as "user billing addresses, IP addresses, and geolocation data" could determine in-state use, 168 F.4th at 964, the encrypted and user-controlled nature of location data here means Apple lacks comparable common proof.

***Affirmative Defenses.*** The district court also failed to conduct a proper predominance analysis of Apple's affirmative defenses. Apple asserted waiver, consent, and failure to mitigate; those defenses turn on individualized facts about how each putative class member learned about, understood, used, and continued to use the People album feature, including whether they used iCloud Photos to sync their People albums. Opp.10-12. As just one example, one named Plaintiff first added his name to a People album after moving for class certification. Opp.11.

The court disposed of Apple's argument by assuming that every class member would supposedly "consent[]" in the same way—by "using the Photos app." Order.15. But that reasoning improperly collapses BIPA's statutory consent requirement with Apple's defenses. Assuming common law defenses are available—as this Court did in *Svoboda* (168 F.4th at 965)—they require a different inquiry. The relevant question is not whether an individual "used the Photos app,"

16

but instead whether the user was on notice of disclosures, whether the user accepted the feature's benefits, and what degree of personal information the user chose to provide or withhold. *See Essex Ins. v. Stage 2*, 14 F.3d 1178, 1181 (7th Cir. 1994) (under Illinois law, waiver may be "implied, arising from acts, words, conduct, or knowledge").

The district court did not meaningfully analyze those individualized issues. Its treatment of Apple's defenses was equivocal: it appeared to assume for some purposes that the defenses could be considered, Order.15, but elsewhere suggested they are inconsistent with BIPA or could be addressed at a later phase, Order.24. That was not the rigorous analysis Rule 23 requires. Courts cannot avoid issues of predominance by deferring critical merits questions implicating individualized issues for later. The court was required to either identify common proof capable of resolving Apple's defenses across the class, or else explain why the individualized issues Apple identified would not predominate. It did neither.

***Damages.*** The district court's analysis elided the fact that BIPA damages are "discretionary rather than mandatory." *Cothron v. White Castle Sys.*, 216 N.E.3d 918, 929 (Ill. 2023). BIPA sets maximum statutory amounts; it does not mandate an identical award—or any award—for every class member. Under similar discretionary provisions, courts have recognized that damages turn on individualized inquiries, including "the severity of the violation," "actual damage[s]," "the extent

17

of intrusion into the plaintiff's privacy," and "whether there was a reasonable purpose for the violation." *Campbell v. Facebook*, 315 F.R.D. 250, 268 (N.D. Cal. 2016). The court's failure to consider such questions, which implicate each user's knowledge and use of the People album feature, was legal error. *See Comcast*, 569 U.S. at 34 (class "improperly certified" where district court "refus[ed] to entertain arguments against respondents' damages model that bore on the propriety of class certification").

### 2. The district court also failed to conduct a rigorous superiority analysis

The district court's superiority analysis was fatally flawed because it treated self-identification as a claims administration detail rather than an impermissible substitute for proof on issues central to class membership, liability, defenses, and recovery. Rule 23(b)(3) requires the court to assess whether a class action would be manageable and superior to other available methods. *Mullins v. Direct Digital*, 795 F.3d 654, 664 (7th Cir. 2015). That analysis *must* account for "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D).

The district court failed to do so. It concluded that "a combination of Apple's Illinois customer lists, iCloud enrollees, and user declarations can identify the class members," Order.25, without addressing why these sources enable reliable identification of class members or how Apple could meaningfully challenge them. Apple's own user-privacy protections—including the use of on-device storage and

end-to-end encryption systems for iCloud Photos—prevent it from identifying any alleged class member.  Opp.4-5.  As the court acknowledged, Apple has "no record of who took photos of themselves, whether the people are in a People album, whether that album is labeled, or whether the label identifies that user."  Order.25.  Plaintiffs do not meaningfully challenge these facts.  Motion.18.

Nevertheless, the court approved a self-identification regime, pointing to this Court's decision in *Mullins* to posit that fraud detection tools are sufficient to manage the classes here.  Order.25-26 (citing *Mullins*, 795 F.3d at 667).  But affidavits here are susceptible to fraud in ways not present in *Mullins*.  There, this Court noted that the value of each claim was approximately $70, low enough that it was questionable "whether many people would be willing to sign affidavits under penalty of perjury."  795 F.3d at 667.  Here, Plaintiffs seek $5,000 per class member, so the incentive for fraudulent self-identification is vastly greater.  And in *Mullins*, this Court emphasized that the defendant had customer records such that fraud could be addressed via "auditing processes" and "sampling for fraud detection."  *Id.*  But Apple does not have access to data for such an "audit."  Apple could test class membership only by asking person-by-person questions—including whether each individual took or saved photos of themselves, whether those photos were in a People album, whether and how they labeled that album, whether and when they

19

synced their photos to iCloud Photos, and whether those activities took place in Illinois. Opp.15-17.

The record confirms that risk is not hypothetical: after Plaintiffs moved for class certification, one named Plaintiff tried to insert himself into the iCloud subclass by adding his first name to a People album on an iPhone that he mistakenly believed had iCloud Photos enabled. Opp.16-17; Supp.Opp.17. Would-be claimants could similarly alter user-controlled labels or settings after receiving class notice, and Apple would have no way to detect that from its own records.

The district court failed to grapple with this fundamental problem. Apple should not be penalized under Rule 23 for designing systems that deliberately do not access user data. Had the court properly evaluated the substantial risk of fraud, it could not have justified a finding of superiority.

## B. The Certification Order Creates Coercive Settlement Pressure Divorced From The Merits

Rule 23(f) review is appropriate where the "stakes are large and the risk of a settlement" depriving this Court of the opportunity to review certification "is substantial." *Blair*, 181 F.3d at 835. The need for interlocutory review is particularly stark where statutory damages invite "massive liability unmoored to actual injury." *Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393, 445 n.3 (2010) (Ginsburg, J., dissenting).

The stakes here are extraordinary and far exceed the sums that warranted interlocutory review of certification in prior cases. Plaintiffs estimate that the broadest certified class includes 6.5 million members—over half the population of Illinois—each seeking up to $5,000 in damages. That potential exposure is orders of magnitude larger than the sums of threatened liability this Court has previously accepted as coercive and warranting Rule 23(f) review. *See Szabo v. Bridgeport Machs.*, 249 F.3d 672, 675 (7th Cir. 2001) ($200 million); *Creative Montessori Learning Ctrs. v. Ashford Gear*, 662 F.3d 913, 916 (7th Cir. 2011) ($11.11 million); *Kohen v. Pac. Inv. Mgmt.*, 571 F.3d 672, 678 (7th Cir. 2009) ("multi-hundred-million-dollar claim").

## II.   IMMEDIATE REVIEW IS NEEDED TO PROVIDE GUIDANCE ON IMPORTANT, RECURRING QUESTIONS

Even apart from the serious doubts about the correctness of the certification order, review is warranted because this case presents recurring BIPA class certification issues that may otherwise evade appellate review. *Blair*, 181 F.3d at 835.

BIPA litigation has increased sharply, with federal filings rising 13-fold in recent years. *See* Blake Fensom et al., *The Who, Why, and Where of Biometric Privacy Litigation: An Empirical Analysis of BIPA Cases 2015-2024*, The Antitrust Source, June 2025, at 3. And BIPA defendants are not just major technology companies: any entity that deploys a photo-organization software—from major

platforms to solo wedding photographers using commercially available sorting tools—faces the same risks and litigation dynamics. *See id.* at 5-6 (BIPA cases span across industries).

Yet the coercive effect of certification on settlement systematically shields important class certification questions from appellate review. *See supra* Part I.B. Indeed, almost two decades after BIPA's enactment, the only two times the federal courts of appeal have reviewed the propriety of BIPA class certification was through Rule 23(f) review. *Patel v. Facebook*, 932 F.3d 1264, 1269-70 (9th Cir. 2019); *Svoboda*, 168 F.4th at 962-67. As this Court has recognized in the analogous context of securities class actions, this means that review of "novel and important legal issue[s]" "may be possible only through the Rule 23(f) device." *West*, 282 F.3d at 937. This case presents an ideal vehicle for appellate guidance, as it presents multiple questions that recur across BIPA class actions.

*First*, courts are split over what the "biometric identifiers or biometric information" element requires. *See* 740 ILCS 14/15; *Davis v. e.l.f. Cosms.*, No. 22 C 5069, 2024 WL 2722663, at *6 & n.2 (N.D. Ill. May 28, 2024) (collecting cases). The Ninth Circuit and multiple district courts have (correctly) held that BIPA applies only where the alleged "biometric" data is capable—by itself—of identifying a particular person. *See, e.g.*, *Zellmer v. Meta Platforms*, 104 F.4th 1117, 1123-25 (9th Cir. 2024); *G.T.*, 742 F. Supp. 3d at 799-801. Other courts have ruled that the

22

element is met so long as the data can identify a person "in conjunction with" other user-provided information available to the defendant. *See, e.g.*, *Castelaz*, 2024 WL 136872, at *6-7; *Daichendt v. CVS Pharmacy*, No. 22 CV 3318, 2023 WL 3559669, at *1 (N.D. Ill. May 4, 2023). And still others have held that there is no need to identify a particular person at all, so long as the data at issue falls under one of the five categories listed in BIPA's definition of "biometric identifiers." *Davis*, 2024 WL 2722663, at *6 n.2.

That question has significant implications for predominance. If BIPA requires the allegedly "biometric" data itself to identify a person, Plaintiffs cannot satisfy that element with evidence that Apple's vectors merely distinguish one face image from another and sort them within a private photo library. They must show, with common proof, that those vectors *identify* the real world individuals depicted. If Plaintiffs may rely on other data "in conjunction," i.e., Apple ID information, People album labels, or other user-supplied information, to make the vectors identifying, then predominance turns on whether the necessary link even exists and can be proved class-wide. Here, that link depends on individualized, user-controlled facts: whose face appears in the photo, whether the person in the photo is the device user, whether the user labeled the album, what the label says, and whether the label identifies the user. And if BIPA does not require person-specific identification at all, that is a

23

dispositive legal question on which courts are divided and that this Court should address.

*Second*, this Court has expressly left unresolved whether common law defenses such as consent, waiver, estoppel, and failure to mitigate can preclude BIPA liability. *See Svoboda*, 168 F.4th at 965. That question is core to the class certification inquiry. If, as this Court has previously assumed, *id.*, those defenses are available, Apple is entitled to test class members' individualized knowledge, choices, labeling, continued use, and mitigation. Those issues bear directly on predominance, typicality, adequacy, and damages, yet the district court did not meaningfully account for them in certifying the classes. Order.9-10, 15, 24.

*Finally*, precedent has not resolved the boundary between permissible self-identification at the claims administration stage and impermissible reliance on self-serving declarations to supply individualized facts central to class membership, liability, and defenses. *Compare Mullins*, 795 F.3d at 669-72 (permitting affidavit-based claims verification after class-wide liability was resolved), *with Dancel v. Groupon*, 949 F.3d 999, 1009-10 (7th Cir. 2019) (holding that affidavits cannot replace common proof of an individualized liability element). That boundary is particularly significant where, as here, user-privacy protections prevent Apple from verifying user-level facts needed to establish class membership, liability, and defenses.

24

These questions will continue to arise until this Court addresses them.  This case presents an ideal vehicle for the Court to do so.

## CONCLUSION

Apple's petition for permission to appeal should be granted.

Dated:  June 22, 2026

PURVI G. PATEL
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017

GREGORY F. MILLER
MORRISON & FOERSTER LLP
925 Fourth Avenue, Suite 3800
Seattle, WA 98104

CASSANDRA J. LINCOLN
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

Respectfully submitted,

/s/ Joseph R. Palmore

JOSEPH R. PALMORE
   *Counsel of Record*
KATIE VIGGIANI
TIFFANI FIGUEROA
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(202) 887-6940
JPalmore@mofo.com

*Counsel for Apple Inc.*

25

## CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the relevant type-volume limitations and typeface and type style requirements of the Federal Rules of Appellate Procedure and Circuit Rules because it has been prepared using a proportionally spaced typeface, including serifs, in 14-point Times New Roman font using Microsoft Word and includes 5,200 words, excluding the parts exempted by the Rules.

Dated:  June 22, 2026                    /s/ Joseph R. Palmore
                                         Joseph R. Palmore

# CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be submitted to the Clerk of Court for the United States Court of Appeals for the Seventh Circuit electronically via e-mail to USCA7_Clerk@ca7.uscourts.gov on June 22, 2026.

I further certify that I caused a copy of this filing to be served on the following counsel via e-mail and mail:

ANDREW D. SCHLICHTER
JEROME J. SCHLICHTER
TROY A. DOLES
ALEXANDER L. BRAITBERG
CHEN KASHER
KAITLIN MINKLER
SCOTT A. BUMB
SCHLICHTER BOGARD LLC
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115
aschlichter@uselaws.com
jschlichter@uselaws.com
tdoles@uselaws.com
abraitberg@uselaws.com
ckasher@uselaws.com
kminkler@uselaws.com

CHRISTIAN G. MONTROY
MONTROY LAW OFFICES, LLC
2416 North Center
P.O. Box 369
Maryville, IL 62062
(618) 223-8200
cmontroy@montroylaw.com

Dated:  June 22, 2026

/s/ Joseph R. Palmore
Joseph R. Palmore

MF-371355081

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JANE DOE, by and through next friend JOHN DOE, RICHARD ROBINSON, YOLANDA BROWN, JONATHAN LEBLOND, PATRICIA ORRIS, ANGELA STEVENS, JESSICA JACKSON, MELISSA OATMAN, JUSTIN REVELO, and TAYLOR VALL, on behalf of themselves and all other persons similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 3:20-CV-421-NJR** |
| **APPLE INC.,** | |
| **Defendant.** | |

**<u>MEMORANDUM AND ORDER</u>**

**ROSENSTENGEL, District Judge:**

Plaintiffs in this proposed class action allege that Defendant Apple Inc. ("Apple") violated Illinois's Biometric Information Privacy Act ("BIPA") when it collected and possessed the biometric identifiers and biometric information (collectively, "biometric data") of Illinois citizens via the People album feature of the Photos app found on Apple devices without providing those citizens with the required disclosures or obtaining written consent. (Doc. 250).

Now pending before the Court is Plaintiffs' Motion for Class Certification under Federal Rule of Civil Procedure 23(b)(3) and their supplemental brief in support. (Docs. 176, 241). Apple opposes the motion (Docs. 192, 271), and Plaintiffs filed a reply (Docs. 211, 274). For the following reasons, the Motion for Class Certification is granted.

**BACKGROUND**

**I.    BIPA**

In 2008, Illinois passed BIPA due to concerns with emerging technology and the increasing collection and use of biometrics—identifiers such as retina or iris scans, fingerprints, voiceprints, or faceprints that are biologically unique to an individual. *See*740 ILCS § 14/10; *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1203, 1206 (Ill. 2019) ("*Rosenbach II*"). By enacting BIPA, Illinois codified individuals' "right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent." *Rosenbach II*, 129 N.E.3d at 1206; *see also Svoboda v. Amazon.com Inc.*, 168 F.4th 956, 959 (7th Cir. 2026) (BIPA was enacted "to strengthen biometric data security"); *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 621 (7th Cir. 2020). To that end, BIPA regulates the "collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* (quoting 740 ILCS 14/5(g)); *see also Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1149–50 (7th Cir. 2020) (explaining BIPA's history and purpose). A "biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. "'Biometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

Section 15(a) of BIPA requires a private entity in possession of biometric data to develop, publish, and comply with a written policy that establishes a data retention schedule and guidelines for destroying biometric identifiers and information. 740 ILCS

Page 2 of 27

14/15(a). Section 15(b) prohibits a private entity from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric identifier or biometric information unless they first provide notice and obtain the person's written consent. 740 ILCS 14/15(a).

BIPA provides for damages of $1,000 for each negligent violation of the Act and $5,000 for each intentional or reckless violation of the Act. 740 ILCS 14/20(a)(1)–(2). Section 20 of BIPA was amended in 2024 to provide that "an entity that collects the same biometric data from the same person using the same method of collection in violation of Section 15(b) only commits a single violation." *Svoboda*, 168 F.4th at 959 (citing 740 ILCS 14/20(b)). Under Seventh Circuit precedent, the amendment to section 20 applies retroactively to cases pending when it was enacted, including the instant case. *Clay v. Union Pac. R.R. Co.*, 171 F.4th 975, 979 (7th Cir. 2026).

## II.     Fourth Amended Complaint

In the Fourth Amended Complaint (Doc. 250), Plaintiffs allege that Apple's Photos app, which comes pre-installed on Apple Devices, automatically uses facial recognition technology to scan individual face geometries and create a unique "faceprint" for each person detected in the user's photo library. (*Id.* ¶¶ 2, 76-77, 81, 88). Plaintiffs claim that Apple's scan of face geometry constitutes a biometric identifier as defined by BIPA. (*Id.* ¶ 79). After the biometric identifiers are collected on the Apple Device and the software has a sufficient sampling of images, the Photos app then applies an algorithm to identify the Apple Device user, thereby creating biometric information that is stored on the Apple Device and catalogued in the Photos app. (*Id.* ¶¶ 96, 123). Beginning in 2017, Apple began

Page 3 of 27

syncing photographs and associated data across multiple Apple Devices, if those devices were logged into iCloud with the user's Apple ID. (*Id.* ¶¶ 127-128). Plaintiffs assert that this data is biometric information under BIPA because it is derived from biometric identifiers—the scans of facial geometry—and it can be used to identify individuals. (*Id.* ¶ 141). Plaintiffs allege that Apple collects and stores this biometric information on its servers.

As of July 29, 2024, Apple began storing users' faceprints directly to its servers via iCloud where a user (i) has at least 5,000 "assets" (*i.e.*, photographs and videos) in his or her Photos app, and (ii) has iCloud photo library enabled with at least 10 gigabytes of storage. (*Id.* ¶¶ 219, 227). Whereas Apple previously stored biometric information *derived* from faceprints to its servers, it now syncs the faceprints themselves. (*Id.*). Apple estimates that approximately 2,665,591 Illinois users received the July 2024 software update and have at least 5,000 assets in their Photos app. (Doc. 243-2).

Despite its collection and use of biometric data, Plaintiffs allege that Apple did not obtain users' informed, written consent or develop a written policy, made available to the public, establishing a retention schedule or guidelines for permanently destroying biometric data, in violation of BIPA sections 15(a) and 15(b). (*Id.* ¶¶ 107, 112).

Plaintiffs now move for certification of a class and two subclasses defined as follows:

**Local Device Class**

Every Illinois citizen whose Apple Device put a photograph of that citizen into a People album at any time between September 13, 2016, and the present.

**iCloud Subclass**

Every Illinois citizen who had an Apple Device with a People album tagged with that citizen's name or other identifier, and had an iCloud account enabled for photo storage, at any time between September 13, 2016, and the present.

**iCloud Faceprint Subclass**

Every Illinois citizen who had an Apple Device running iOS 17.6, MacOS Sonoma 14.6 or iPadOS 17.6 or later and: (1) had iCloud photo library enabled with at least 10 gigabytes of storage, and (2) their Apple Device put a photograph of that citizen into a People album, and (3) who had 5,000 or more assets (*i.e.*, photos and videos) in their iCloud photo library, at any time between March 25, 2025 and the present (inclusive).

(Docs. 176, 242).

Plaintiffs Doe, Robinson, Brown, LeBlond, Orris, and Stevens are members of the Local Device Class. Plaintiff Robinson is also a member of the iCloud Subclass. Plaintiffs Jackson, Oatman, Revelo, and Vall are members of the iCloud Faceprint Subclass.

### LEGAL STANDARD

"A district court may certify a case for class-action treatment only if it meets the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the conditions of Rule 23(b)." *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 800 (7th Cir. 2017). Here, Plaintiffs seek to certify a class under Rule 23(b)(3) and therefore must show that "questions of law or fact common to the class members predominate over any questions affecting individual members" and that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

"Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements, but they need not make that showing to a degree of absolute certainty." *Messner*, 669 F.3d at 811 (citation omitted). Instead, they must show that the proposed class "satisfies Rule 23 by a preponderance of the evidence." *Svoboda*, 168 F.4th at 961.

In determining whether Rule 23 has been satisfied, a court must conduct a rigorous analysis that often overlaps with the merits of the claim since the determination "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013). Yet, courts "should not turn the class certification proceedings into a dress rehearsal for trial on the merits." *Messner*, 669 F.3d at 811. If Plaintiffs meet the requirements of Rule 23, "the class must be certified, even if it is sure to fail on the merits." *Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022).

## DISCUSSION

I.    **Rule 23(a) — Numerosity, Commonality, Typicality, and Adequacy**

   **A. Numerosity**

The numerosity requirement is satisfied when the proposed class is "so numerous that joinder of all members is impracticable." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020) (quoting FED. R. CIV. P. 23(a)(1)). "While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement." *Id.* (quoting *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017)).

Here, Plaintiffs have presented evidence that the proposed Local Device Class

Page 6 of 27

consists of approximately 6.5 million members; the iCloud Subclass consists of approximately 1 million members; and the iCloud Faceprint Subclass comprises as many as 2.6 million members. In a footnote related to the superiority requirement of Rule 23(b)(3), Apple expresses its disagreement with Plaintiffs' class size estimates. (Doc. 192 at p. 15). It does not, however, dispute that the proposed class is so numerous that joinder would be impracticable. Accordingly, the Court finds the numerosity requirement is met.

### B. Commonality

For a class to be certified, there must be questions of law or fact that are common to the class. FED. R. CIV. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quotation omitted). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* Instead, the claims must depend on a "common contention" that is "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* In other words, "[w]hat matters to class certification" is whether the class proceeding will "generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

Plaintiffs assert they would rely on common proof to answer questions that apply to all class members. With regard to their section 15(b) claim regarding the collection of

Page 7 of 27

biometric data, these common questions include: (1) whether Apple "collected" data from each class member, which it then used to identify the class member, thereby constituting a biometric identifier or biometric information; (2) as to the iCloud and iCloud Faceprint subclasses, whether Apple stored the class members' biometric data on its servers; (3) whether Apple failed to adequately inform class members that it is collecting and storing biometric identifiers or information; (4) whether Apple obtained informed written consent as required by BIPA; and (5) whether Apple's alleged conduct was negligent, intentional, or reckless. As to their section 15(a) claim, Plaintiffs refer to evidence that can resolve, in one fell swoop, the classwide question of whether Apple developed and published the written policy required by section 15(a).

These "statutory requirements" quite obviously "present common questions." *Svoboda*, 168 F.4th at 963. Apple disputes that these common questions have common answers for each class member, arguing that whether data on any device is capable of identifying anyone—and thus constitutes a biometric identifier or biometric information—cannot be answered for all class members "in one stroke." *Dukes*, 564, U.S. at 350. Apple argues that the answer to that question depends on whether each person labeled their People album with personal identifying information ("PII"). (Doc. 192 at p.m. 13).

The Court disagrees. Plaintiffs have framed one of the common questions as whether Apple collected biometric data from each class member and used it to identify the class member. Plaintiffs have presented evidence that the Photos app scans each image for potential faces and collects faceprints, which are feature vectors that uniquely

identify face images but do not associate a name with the face. (Doc. 182-3; 182-12). Specifically, the app deploys "machine learning algorithms" on the device to recognize people from their visual appearance. (Doc. 213-2). It is also undisputed that Apple knows the identities of its device users, including their names and email addresses, which are associated with their Apple IDs. Thus, whether Apple can identify users from their faceprints, alone or in combination with users' personal information, is an issue that can be resolved on a classwide basis.

Additionally, with regard to the iCloud Faceprint Subclass, Plaintiffs have provided evidence that Apple indeed collected faceprints from users and automatically uploaded them to the iCloud Photo Library so that a secondary device or new device can download that data without having to regenerate the faceprint. (Doc. 243-1). And the Photos app does not prompt the user to provide any form of consent before the faceprint is uploaded to Apple's servers. (*Id.*). There is also evidence that Apple did not publish any retention schedule applicable to faceprints synced to iCloud. (*Id.*). Whether these practices are prohibited by sections BIPA 15(a) and 15(b) will resolve the iCloud Faceprint Subclass's claims in one stroke.

Apple also argues that the remaining common questions, including whether Apple gave adequate notice, obtained informed consent, and acted negligently, intentionally, or recklessly require individualized inquiries into each class member's consent, waiver, and failure to mitigate.

The Seventh Circuit has not decided whether common law defenses such as consent, waiver, and failure to mitigate even apply to BIPA claims. *See Svoboda*, 168 F.4th

at 965 (assuming without deciding that common law defenses can preclude BIPA liability). Even if they do, whether Apple gave adequate notice and obtained informed, written consent as required by BIPA is a question that can be resolved on a classwide basis. A class member cannot consent to or waive any objection to the collection of his or her faceprint without first being presented with notice that Apple is obtaining such data. And whether Apple acted negligently, intentionally, or recklessly, can be determined on a classwide basis through evidence of its conduct.

Because each of these questions can be answered on a classwide basis using common proof, the Court finds that the commonality requirement has been met.

## C. Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). A representative "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021) (quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)). Typicality "is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Id.* (quoting *Lacy v. Cook Cnty.*, 897 F.3d 847, 866 (7th Cir. 2018)). "This alignment provides the assurance that, in pursuing their own claims, the representatives will also advance the interests of the class." *Gaertner v. Commemorative Brands, Inc.*, No. 23-CV-02452-SPM, 2026 WL 248292, at *8 (S.D. Ill. Jan. 30, 2026) (citing *Howard*, 989 F.3d at 605).

Page 10 of 27

Typicality and commonality are "closely related," both helping the court to decide whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Howard*, 989 F.3d at 606 (quoting *Dukes*, 564 U.S. at 349 n.5). "The distinction between commonality and typicality is that the commonality inquiry focuses on what characteristics are shared among the whole class while the typicality inquiry focuses on the desired attributes of the class representative." *Id.* (citation omitted).

Plaintiffs argue that the claims of the class representatives are typical of the class because they all arise from the same course of conduct, *i.e.*, Apple's practices with respect to biometric identifiers and biometric information, and they are based on the same legal theories. Plaintiffs further assert that the subclasses are represented by individuals who are typical of the subclass. Plaintiffs Doe, Robinson, Brown, LeBlond, Orris, and Stevens, representatives of the Local Device Class, are all Illinois citizens who used an Apple device that put a photo of them into a People album. Plaintiff Robinson is also a member of the iCloud Subclass because he had an iCloud Photo Library with a folder of tagged photos of himself. Finally, the claims of Plaintiffs Jackson, Oatman, Revelo, and Vall are typical of the iCloud Faceprint Subclass because their claims arise from Apple's rollout of software that collects and stores faceprints on its servers without obtaining the proper consent.

Apple does not dispute that the named Plaintiffs are typical of the class and subclasses for the reasons cited by Plaintiffs. Instead, it argues that the class

representatives are subject to unique defenses that may not be applicable to other members of the class. For example, none of the named Plaintiffs labeled their People albums with their PII, so they are at odds with anyone in the class who did so. Likewise, Plaintiffs' continued use of the Photos app after filing this lawsuit sets them apart from class members who never used the app, stopped using the app, or elected not to enable iCloud Photos. Apple contends that these unique defenses will consume the merits of the case, thereby defeating typicality.

"The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (quoting *J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994, 999 (7th Cir. 1980)). "The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer." *Id. See also Westmoreland v. Hughes*, 144 F.4th 952, 956 (7th Cir. 2025) (quoting *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974)) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff . . . then the named plaintiff is not a proper class representative.").

Here, typicality is not destroyed by potential factual differences among the class members. As discussed above, whether any class member labeled their People album with PII is irrelevant to the question of whether Apple collected faceprints that are, themselves or in combination with other personal information possessed by Apple,

capable of identifying people. Additionally, the named Plaintiffs cannot be "at odds" with class members who stopped using the app, never used the app or elected not to enable iCloud Photos. Class members who used the app but later disabled it would still have a claim for the period of time they used it, class members who elected not to enable iCloud Photos are simply not part of the iCloud subclass, and people who never used the app are not part of any class at all.

Because the claims of the representative plaintiffs are typical of those in the proposed classes, the typicality requirement is met.

**D. Adequacy of Representation**

Under Rule 23(a)(4), the representative parties—both the named Plaintiffs and class counsel—"must fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The "adequacy inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

1. Class Counsel

Beginning with class counsel, Rule 23(g) requires a court to consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A). The Court may consider any other matter pertinent to counsel's ability to

fairly and adequately represent the interests of the class. FED. R. CIV. P. 23(g)(1)(B).

Apple does not challenge the adequacy of class counsel, and the Court finds that counsel meets the requirements of Rule 23(g). The Court has witnessed lead counsel, Schlichter Bogard LLP, and co-counsel, Montroy Law Offices, LLC, diligently represent the interests of the putative classes for the past six years. Attorney Andrew Schlichter, partner at Schlichter Bogard, attested that the firm conducted an extensive investigation into potential claims, thoroughly analyzed factual issues, and extensively researched BIPA and data privacy rights prior to filing this action. (Doc. 176-10 at ¶ 10). It also has substantial experience handling class actions in federal courts across the country, having been appointed as class counsel in more than 40 cases. (Doc. 176-10). Counsel also successfully opposed Apple's motion to dismiss, has handled multiple complex discovery issues, and will continue to commit all necessary resources to representing the class. (*Id.*). For these reasons, the Court finds that lead counsel and co-counsel will fairly and adequately represent the class and subclasses.

2.  Named Plaintiffs

"A named plaintiff is ordinarily considered to be adequate so long as her claims neither conflict with nor are antagonistic to those of other class members." *In re Boeing Co. Aircraft Sec. Litig.*, --- F.R.D. ----, 2026 WL 734721, at *7 (N.D. Ill. Mar. 16, 2026) (citing *Howard*, 989 F.3d at 609-10). Plaintiffs maintain that they are adequate representatives because they suffered the same injuries as the class members: their biometric data was collected and stored by Apple without notice or informed consent. Because the named Plaintiffs have the same interest as members of the class and subclasses in establishing

Apple's liability and obtaining relief, there are no conflicts of interest, and they are not subject to unique defenses, they argue, they should be appointed as class representatives.

In response, Apple again asserts the named Plaintiffs will be subject to unique defenses. Specifically, Apple argues that the named Plaintiffs may be subject to affirmative defenses including waiver, consent, and failure to mitigate.

Even assuming Plaintiffs' BIPA claims are subject to these defenses, Apple's argument still fails. Consent would be a question common to each named Plaintiff and class member, as each class member would have uniformly "consented" by using the Photos app. *Svoboda*, 168 F.4th at 965 ("Consent presents a common question because class members uniformly opt into the VTO by clicking the 'try on' button. It is therefore appropriate for classwide resolution."). Even if there are individual questions about waiver or failure to mitigate, these defenses "do not defeat class certification, particularly where other common questions predominate." *Id.* at 966 (citing *Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 453-54). The *Svoboda* court recognized that "damages, and affirmative defenses bearing on measures of harm, are ancillary to the central question—liability—and can be handled at a separate phase of litigation." *Id.* at 966. The same is true here. Whether Apple violated BIPA is a question that can be answered across the board for all members of the class. Whether any Plaintiffs are subject to individual common law defenses affecting their damages can be determined separately.

Apple also argues that the named Plaintiffs are inadequate because they do not understand the nature of their claims or BIPA itself. In other words, this case is nothing more than lawyer-driven litigation with the named Plaintiffs serving as figureheads.

Page 15 of 27

Apple cites to select portions of Plaintiffs' testimony indicating some did not understand their claims and the classes, BIPA generally, or their roles in the litigation as class representatives. (Doc. 272 at pp. 18-20). It also refers to testimony demonstrating that the named Plaintiffs joined the litigation after seeing an online ad or were recruited through an email listserv designed to connect lawyers with clients. Plaintiffs dispute Apple's portrayal of the named Plaintiffs, pointing to other testimony that shows they are informed, have a basic understanding of their claims, have worked with counsel to answer discovery, and are committed to participating in the litigation.

Courts in this Circuit "have repeatedly emphasized the importance of class representatives having reviewed court papers prior to filing, answering interrogatories (obviously in a truthful way), conferring with attorneys about the prosecution of the action, and understanding the facts of the case." *Acosta v. Bd. of Trs. of Unite Here Health*, 779 F. Supp. 3d 974, 997 (N.D. Ill. 2025) (citation omitted). "But it is important not to overstate the burden placed on the class representative." *Id.* Indeed, the Seventh Circuit has recognized that, from a practical and functional standpoint, "it is counsel for the class representative and not the named parties[] who direct and manage these actions. Every experienced federal judge knows that any statements to the contrary [are] sheer sophistry." *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) (citation omitted); *see also Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080 (7th Cir. 2013) (describing the role of the class representative as "nominal" and acknowledging that class action suits are "entirely managed by class counsel").

Not only does the law not require the named Plaintiffs to have an advanced

understanding of the law, but the record here reflects that they have a basic understanding of BIPA, their claims under it, and their job as class representatives. As just one example, Plaintiff Jackson testified regarding her knowledge of BIPA, the meaning of "biometric," what a faceprint is, why she is concerned about the collection of biometrics, the People album feature, the Fourth Amended Complaint, her role as a class representative, and her willingness to continue serving in that capacity. (Doc. 274-2). The remaining named Plaintiffs testified similarly. (Docs. 176-2, 176-3, 176-4, 176-5, 176-6, 176-7, 176-8, 176-9, 177-9, 241-1, 241-2, 241-3, 241-4). Accordingly, the Court finds that the named Plaintiffs are adequate class representatives.

## II.    Rule 23(b) — Predominance and Superiority

The predominance requirement "builds on commonality" and requires that common questions predominate over individual ones. *Svoboda*, 168 F.4th at 961 (quoting *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338 (7th Cir. 2023)). "While commonality requires that common questions exist, predominance requires that they also predominate." *Id.* "Predominance tests whether the class is 'sufficiently cohesive' to justify class adjudication." *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). To be sufficiently cohesive, the claims must "arise from a common nucleus of operative facts and issues." *Id.* (quoting *Scott v. Dart*, 99 F.4th 1076, 1092 (7th Cir. 2024)).

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013). "Predominance does not entail a mechanical tallying of common questions against individual questions. Instead, a district court must identify the elements of each claim, the proof necessary for each, the

Page 17 of 27

manageability of those issues at trial, and alternative procedural tools." *Svoboda*, 168 F.4th at 961. "From there the court must scrutinize the relationship between common and individual questions and assess their relative importance." *Id.* The Seventh Circuit has described this analysis as involving a "peek at the merits" that is "limited to those aspects of the merits that affect the decisions essential under Rule 23." *Dancel*, 949 F.3d at 1005.

The final requirement under Rule 23(b)(3) is that a class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Gunderson v. Amazon.com, Inc.*, 350 F.R.D. 376, 395 (N.D. Ill. 2025) (quoting FED. R. CIV. P. 23(b)(3)). A class action is superior if it will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). In other words, a class action must be the "most practical and efficient way to resolve the litigation." *Svoboda*, 168 F.4th at 961 (quoting *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 898 (7th Cir. 2024)). To make that determination, a court must weigh the costs and benefits of the class action compared to any other available methods. *Id.* (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663–64 (7th Cir. 2015)).

Factors pertinent to both the predominance and superiority analyses include:

(A) the class members' interests in individually controlling the prosecution of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by class members;

(C) the desirability or undesirability of concentrating the litigation of the

Page 18 of 27

claims in the particular forum; and

(D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

### A.   <u>Predominance</u>

Plaintiffs assert that the common questions they identified above would also predominate over any individualized inquiries. Apple disagrees.

1.   Possession or Collection of Biometric Identifiers

Under section 15(b), a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain" biometric identifiers or information without first obtaining written, informed consent. 740 ILCS 14/15(b). A biometric identifier is a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

In order for Plaintiffs to succeed on their claims, Apple argues, they must be able to show that Apple collected or possessed biometric data *capable* of identifying the Plaintiffs. Apple asserts this cannot be proved on a classwide basis given the numerous individualized issues regarding how a user interacts with the People album feature. As to the Local Device Subclass, Apple claims that individual inquiries are required into whether each putative class member: (1) had an Apple device during the class period; (2) took photos of themselves with the Camera app; (3) used the Photos app; (4) had photos clustered into a People album; (5) labeled any People albums; (6) labeled a People album with PII; and (7) changed labels or deleted photos in their People album. The iCloud Photos Subclass would further require inquiries into whether the putative class member enabled iCloud Photos, whether they were in Illinois when they did so, and

whether they disabled iCloud Photos or otherwise stopped using the Photos app or Camera app. Finally, as to the iCloud Faceprint Class, Apple contends that even more questions apply, including whether the putative class member installed the Sync Update, has at least 5,000 photos or videos in their iCloud Photos library, has at least 10GB of iCloud Photos storage, and whether, after installing the Sync Update, they disabled iCloud Photos or otherwise stopped using the Photos app or Camera app.

Most of these questions are pertinent only to the criteria for class membership. If an individual did not have an Apple device, take a photo of themselves, use the Photos app, or have photos clustered in a People album, then that person is not a member of any class at all. If an individual did not have iCloud Photos enabled, then they would not be part of the iCloud Subclass. The same goes for the iCloud Faceprint Subclass.

That leaves only questions relevant to whether the putative class member labeled any People albums, labeled them with PII, or otherwise changed the labels or deleted photos in their People album. Apple argues that the fundamental differences in whether and how Plaintiffs labeled their People album go to the key disputed issue: whether the data can identify them. (Doc. 272 at p. 9).

Under the circumstances of this case, this Court is not persuaded that individual inquiries into whether a class member labeled his or her People album with PII predominate over questions that are common to the class. The questions of whether Apple "collected" faceprints and whether those faceprints are capable of identifying someone are pertinent to Apple's liability under BIPA and affect the class as a whole. As Plaintiffs acknowledge, if Apple is correct that it does not collect or possess scans of face

geometry, meaning there is no BIPA violation, then such a finding would apply to the entire class. Likewise, if Plaintiffs present evidence proving that Apple collects biometric data that is capable of identifying an individual, regardless of whether the person used PII, then that also affects the entire class. In asking this Court to find that individual questions regarding putative class members' use of PII predominate over questions that are common to the class, Apple is essentially asking the Court to rule on the merits of Plaintiffs' BIPA claim. The Court will not do so. *See Messner*, 669 F.3d at 811 (a court should not use a class certification proceeding as a "dress rehearsal for trial on the merits").

### 2. In-State Use of Technology

To establish a violation of BIPA, class members must be able to show they were in Illinois when they used the Photos app and the alleged violation occurred. *Svoboda*, 168 F.4th at 962. This requirement is relevant to the considerations of "class identification and manageability," as well as "whether proof of location generates an individualized question of fact that predominates over common questions." *Id.*

Apple argues there is no common proof that can demonstrate where each putative class member was located when they used the Photos app or, for the iCloud Faceprint Subclass, where they took advantage of the Sync Update, because taking photos on a mobile device is an "inherently transient activity." (Doc. 191 at p. 15). Apple contends that limiting the class to Illinois citizens does not solve the problem because it does not indicate where the actions relevant to liability took place. Instead, individualized inquires will be required to determine, *inter alia*, whether each putative class resides in Illinois,

Page 21 of 27

took a photo in Illinois, stored their photos in the Photos app in Illinois, had their photos clustered in a People album in Illinois, enabled iCloud Photos in Illinois, and took advantage of Sync Update in Illinois.

In response, Plaintiffs urge the Court to adopt the Ninth Circuit's rationale in *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1275–76 (9th Cir. 2019), where the defendant asserted that individualized proof was needed to show the "[class] member was in Illinois when the scanned photo was taken or uploaded, when a facial recognition analysis was performed, when the photo was tagged or given a tag suggestion, or for similar events." *Id.* The Ninth Circuit disagreed, finding it "reasonable to infer that the General Assembly contemplated BIPA's application to individuals who are located in Illinois, even if some relevant activities occur outside the state. These threshold questions of BIPA's applicability can be decided on a class-wide basis." *Id.* at 1276. The Ninth Circuit concluded that if the BIPA violation occurred "primarily and substantially" in Illinois, then there was no need to have mini-trials on the issue. *Id.*

Here, Apple has not cited to any evidence that the "relevant activities" took place "primarily and substantially" outside of Illinois. Apple cites to the named Plaintiffs' testimony that they took photos in states outside of Illinois, but each Plaintiff also testified that they took photos *in Illinois*. Moreover, Apple's corporate representative, Della Huff, testified that Apple collects and maintains user location data, "including but not limited to the geographic location of your device and information related to your iCloud account and any devices registered thereunder, including but not limited to your Apple ID, device ID and name, and device type." (Doc. 177-7 at p. 2). Seemingly, Apple can turn to

Page 22 of 27

common proof within its own data to determine where the relevant activities occurred.

Even if individualized questions exist regarding the putative class members' location when the BIPA violation occurred, "not all elements of liability must be resolved on a classwide basis to satisfy Rule 23." *Svoboda*, 168 F.4th at 964 (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) ("Rule 23(b)(3) . . . does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." (cleaned up)). "To the contrary, it is not uncommon for class actions to have a 'final phase' for class members to submit individualized proof of a claim" to show that a defendant's actions harmed them. *Id.* "Stated another way, an individual question does not predominate where common questions of law and fact relevant to liability otherwise generate significant efficiencies and the individual question is manageable." *Id.*

In *Svoboda*, the Seventh Circuit found that, despite the individual inquiries that would be required to determine the class members' location at the time of the BIPA violation, "[o]ne alleged course of conduct sufficiently unites the class's claims— Amazon's unlawful use of the VTO feature. And the entire class will 'prevail or fail in unison' on common questions related to that conduct." *Id.* The same rationale applies to this case. Apple's slew of questions about each putative class member's location when they used Apple's technology is a sleight of hand meant to distract from the common questions that connect all plaintiffs: whether Apple collected or possessed Illinois citizens' biometric identifiers and information through the People album feature of the Photos app without first complying with BIPA. If the common questions necessary to

determine BIPA liability are answered in the affirmative, then Plaintiffs "will have established a statutory injury." *Id.* "Even if location is necessary for individual recovery under BIPA, it is more characteristic of the individual questions permitted and often isolated in class actions than a core liability question based on [the defendant's] alleged statutory violations." *Id.* at 964-65. Apple can challenge any particular class member's use of its technology in Illinois at damages stage if Plaintiffs prevail on the merits. *See Zaluda v. Apple Inc.*, 2019 CH 11771 (Ill. Cir. Ct. Cook Cty. Jan. 29, 2026).

### 3.   Apple's Affirmative Defenses

Apple next argues that class certification is improper because there is no generalized proof that can be used to resolve its affirmative defenses of waiver, consent, and failure to mitigate. As discussed above, Apple's defenses of waiver and consent are inconsistent with BIPA's informed, written consent requirements, and it is unclear how a class member can mitigate statutory liquidated damages. This is particularly true now that each collection of the same biometric data from the same person, using the same method of collection, constitutes only a single violation of BIPA. 740 ILCS 14/20(b).

### 4.   Damages

Finally, Apple contends that whether each class member is entitled to damages will require an individualized inquiry into each user's knowledge of how the Photos app and People album feature work. The Court disagrees. BIPA permits liquidated damages for a defendant's violation of the statute, and the amount of damages available depends on the defendant's state of mind. Whether a putative class member knows how the technology works is irrelevant to the damages analysis. If Plaintiffs can establish liability

and intent on a classwide basis, "the damages calculation will be formulaic, and no individual issues need be considered." *Zaluda*, 2019 CH 11771 at 17.

For these reasons, the Court finds that Plaintiffs have met the predominance requirement of Rule 23(b)(3).

B. **Manageability and Superiority**

Apple also argues that a class action is unmanageable and inferior to individual litigation because there is no practical way to identify class members. Apple points to testimony that it cannot identify any alleged class member, as it has no record of who took photos of themselves, whether the photos are in a People album, whether that album is labeled, or whether the label identifies the user. (Docs. 191-9, 191-13, 191-14, 20). It asserts that its ability to identify who has purchased Apple products or services in Illinois does not equate with the ability to identify members of a class who engaged with the People album. Apple further argues that allowing class members to self-identify would be unreliable and risks fraudulent claims, raising significant due process concerns, and that class members have ample incentives to pursue individual claims.

The Court disagrees that a class would be unmanageable. As Plaintiffs assert, a combination of Apple's Illinois customer lists, iCloud enrollees, and user declarations can identify the class members. While the risk of fraudulent claims from self-identified class members "is not zero," the Seventh Circuit has pointed to the tools available to courts during the claims administration process, including "claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to take into account

the size of the claims, the cost of the techniques, and an empirical assessment of the likelihood of fraud or inaccuracy." *Mullins*, 795 F.3d at 667. And "[p]otential due process concerns [can] be resolved when setting the damages amount (if liability is established), and do not provide grounds to deny class certification at this stage." *Howe v. Speedway LLC*, No. 1:19-CV-01374, 2024 WL 4346631, at *17 (N.D. Ill. Sept. 29, 2024); *see also Tapia-Rendon v. United Tape & Finishing Co.*, No. 21 C 3400, 2023 WL 5228178, at *7 (N.D. Ill. Aug. 15, 2023) (noting the Seventh Circuit's finding that "the potential for massive class-wide damages does not render certification inappropriate").

Finally, the Court disagrees that class members have ample incentives to pursue their claims in individual lawsuits. Given recent Illinois and Seventh Circuit precedent regarding BIPA and the assessment of damages for each violation of the statute, the Court finds that the class action device is the superior method for adjudicating the dispute. To the extent Apple is found liable, each class member would be eligible for only one recovery of either $1,000 or $5,000. Practically speaking, the small statutory recovery available means Plaintiffs have little to no incentive to initiate individual lawsuits against one of the world's largest companies. Even if Plaintiffs had some incentive to litigate their claims separately, a class action is the more efficient device and the superior method for adjudicating potentially millions of claims.

The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are met.

## CONCLUSION

Because Plaintiffs have satisfied the requirements of Rule 23 by a preponderance of the evidence, their Motion for Class Certification (Docs. 176, 241) is **GRANTED**. The Court certifies the following classes under Rule 23(b)(3):

**Local Device Class**

Every Illinois citizen whose Apple Device put a photograph of that citizen into a People album at any time between September 13, 2016, and the present.

**iCloud Subclass**

Every Illinois citizen who had an Apple Device with a People album tagged with that citizen's name or other identifier, and had an iCloud account enabled for photo storage, at any time between September 13, 2016, and the present.

**iCloud Faceprint Subclass**

Every Illinois citizen who had an Apple Device running iOS 17.6, MacOS Sonoma 14.6 or iPadOS 17.6 or later and: (1) had iCloud photo library enabled with at least 10 gigabytes of storage, and (2) their Apple Device put a photograph of that citizen into a People album, and (3) who had 5,000 or more assets (*i.e.*, photos and videos) in their iCloud photo library, at any time between March 25, 2025 and the present (inclusive).

The Court **APPOINTS** Schlichter Bogard LLP, and co-counsel, Montroy Law Offices, LLC, as class counsel. The named Plaintiffs are hereby designated as class representatives.

**IT IS SO ORDERED.**

**DATED:   June 5, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**